United States Courts
Southern District of Texas
FILED

SEP 1 9 2025   TL

Nathan Ochsner, Clerk
Laredo Division

AO 243 (Rev. 09/17)

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District SD of Texas | |
|---|---|---|
| Name *(under which you were convicted)*:<br><br>Manuel Ayala Rodriguez | | Docket or Case No.:<br>5:25CV.156 |
| Place of Confinement:<br><br>FCI Sandstone | Prisoner No.:<br><br>15514-579 | |
| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* | |
| | V.   Manuel Enrique Ayala Rodriguez<br>aka: "Gordo"; aka: "El Gordillo" | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:
United States District Court for the Southern District of Texas
1300 Victoria, Suite 1131
Laredo, TX 78040

   (b) Criminal docket or case number (if you know): 5:20-cr-00786-010

2. (a) Date of the judgment of conviction (if you know): Plead on Nov-05-2020

   (b) Date of sentencing: 04-05-2022 (ECF 302)

3. Length of sentence: 192 Months Imprisonment & 5 Years Supervised Release

4. Nature of crime (all counts):

   21 U.S.C. §846,
   21 U.S.C. §841(a)(1)
   21 U.S.C. §841(b)(1)(A)

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐     (2) Guilty ☒     (3) Nolo contendere (no contest) ☐

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

   N / A

6. If you went to trial, what kind of trial did you have? (Check one)   Jury ☐   Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☐   No ☒

AO 243 (Rev. 09/17)

8. Did you appeal from the judgment of conviction?    Yes [X]    No [ ]

9. If you did appeal, answer the following:
   (a) Name of court: U.S. Court of Appeals for the Fifth Circuit
   (b) Docket or case number (if you know): 23-40201
   (c) Result: Appeal dismissed due to waiver and Anders Brief
   (d) Date of result (if you know): 06-14-2024
   (e) Citation to the case (if you know): 2024 U.S. App. Lexis 14518
   (f) Grounds raised:

   Dismissed due to Waiver and Anders filing

   (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes [ ]    No [xx]
      If "Yes," answer the following:
                                    N / A
      (1) Docket or case number (if you know): _____
      (2) Result: _____

      (3) Date of result (if you know): _____
      (4) Citation to the case (if you know): _____
      (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes [xx]    No [ ]

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court: United States District Court for the Southern District of Texas
        (2) Docket or case number (if you know): Same
        (3) Date of filing (if you know): Sua Sponte 3582(c) Motion for USSG Amd. 821

AO 243 (Rev. 09/17)

(4)  Nature of the proceeding:  Motion for Sentence Reduction 18 U.S.C. §3582(c)(2)

(5)  Grounds raised:  The Court order under 18 U.S.C. §3582(c)(2) for a reduction in the term of imprisonment based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant 28 U.S.C. §944(u), and having considered such motion, and taking into account the policy statement set forth at USSG §1B1.10 and the sentencing factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable.

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐    No ☐

(7)  Result:  Motion Granted

(8)  Date of result (if you know):  8-28-2024

(b)  If you filed any second motion, petition, or application, give the same information:

(1)  Name of court:  N / A

(2)  Docket of case number (if you know):

(3)  Date of filing (if you know):

(4)  Nature of the proceeding:

(5)  Grounds raised:

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐    No ☐

(7)  Result:

(8)  Date of result (if you know):

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:    Yes ☐    No ☒

(2)  Second petition:    Yes ☐    No ☐    N/A

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

No reasonable grounds to do so

Page 3

United States v. Ayala-Rodriguez
28 U.S.C. §2255
Summary and Introduction Overview Continuation Page

## Summary and Introduction Overview

A mule received a 192 month sentence for being paid $1,044 to bring 100's of thousands of dollars worth of drugs over the border because his attorney failed to file any sentencing motions or objections to challenge the Government's version of events. Motions the attorney promised his client he would do. Promises Petitioner relied on when deciding to plead.

Mr. Ayala, a minor player in the scheme, received a Kingpin sentence, despite not knowing the details of the operation, nor receiving any share of the spoils.

Did Mr. Ayala know he was bringing drugs? Yes. Did he know the type or the quantity of the drugs? No. He knew his childhood friend gave him a job to bring illicit items across the border, and paid him a sum equivalent to 10-12 weeks pay at his old job.

Petitioner's declaration and the record establishes evidence showing: a non-English speaker who readily accepted responsibility for bringing illicit substances into this country; who also clearly stated to officials, and his attorney, he did not know the type or quantity of drugs. Petitioner was a desperate man trying to get medicine and help for his ailing partner and her child. A man who made the wrong choice to provide for his family until he could get his licenses returned and restart legitimate work. Petitioner accepted he did wrong. He proved through deed and word, he accepted responsibility

United States v. Ayala-Rodriguez
28 U.S.C. §2255
Summary and Introduction Overview Continuation Page

for the harm he helped cause, and tried to make amends as much as he could.

Nevertheless, Personally, petitioner is a man who was taken advantage of by his childhood friend; who was duped, misled, and lied to by his court-appointed lawyer; and a man caught in a maelstrom of language barriers, a global pandemic, and the willful failures of the person appointed to defend his rights. Petitioner did not have the tools to figure out what to do, how to articulate the issues, or protect his rights.

Ayala was forced by his choice and circumstances to trust his case (and life) to Fransico Javier Montemayor, Jr. who turned out not to be worthy of his trust. An attorney that ignored, mislead, and lied to the Fifth Circuit, this Court, and most likely the Texas Bar.

An attorney who repeatedly failed to communicate truthfully or completely to his client from the first interaction, to the last time they saw each other. A licensed professional who: misadvised the minimum length of sentence, failed to follow through on promised sentencing arguments, and ignored his client's questions, concerns, and wishes.

This petition raises two claims of ineffectiveness, all based on the pretrial and sentencing stages of the case: Ground 1: Sentencing failures; and Ground 2: Failures of counsel to conduct an adequate investigation. The particular professional failures and how they

United States v. Ayala-Rodriguez
28 U.S.C. §2255
Summary and Introduction Overview Continuation Page

meet the requirements of controlling law, as well as, the specific harm caused by the failures (where available) are discussed in each ground.

First, Petitioner pro se Manuel Enrique Ayala Rodriguez ("Ayala") will establish common facts which apply to, and support, his grounds:

## Common Facts

The following supportable factual allegations warranting the relief Ayala is requesting, are offered pursuant to Federal Rules of Civil Procedure, Rule 8:

As noted in the declaration, the majority of the following facts were gleaned from court documents retrieved years after the events depicted; were not known to Ayala at the time he decided to plead; when he changed his plea in front of the Judge; or at sentencing. Which occurred 18 months after his change of plea.

1. On March 5, 2020, DEA agents arrested Ayala as he crossed from Mexico into the United States (via the World Trade Bridge), when he was driving a semi-truck of goods. This load, and any semi-truck load Ayala brought into the United States, carried only legal cargo. See Plea Agreement, CR-DOC 128[1] ("Plea") at 10. See also Change of Plea Transcript, CR-DOC 389 ("PT") at 21:23.

---

1- DR-DOC refers to docket entries on this Court's criminal Case No.: 5:20-CR-00786

United States v. Ayala-Rodriguez
28 U.S.C. §2255
Summary and Introduction Overview Continuation Page

2. At his initial arrest, Ayala waived his right to remain silent and gave a statement to the agents admitting to:

   (a) Knowing Juan Manuel Salazar since they were children. Plea at 11; PT at 22;

   (b) Working for Juan for about two years. /Id.;

   (c) There were drugs in what was being delivered, but repeatedly saying he did not know what specific drugs, or quantities, were in the containers. /Id.; and

   (d) Using various delivery containers via his personal vehicle, a Black Suburban. /Id.

At all times, Ayala was truthful, forthright and helpful, admitting to his minimal part in the Salazar operation.

3. Later on, when recounting these details to Attorney Montemayor, Ayala elaborated on why he thought the drugs he was hauling were either cocaine or marijuana. Stating the Zetas Cartel would only allow those two drugs in Ayala's part of Mexico, and that the batteries and other devices worked. See Declaration of Ayala-Rodriguez In Support of the §2255 Petition, filed separately as Exhibit 1 ("Decl."), at ¶    Ayala also indicated there could not be very much being delivered, because everything worked correctly and there would not be much room left over. /Id. In the same meeting Montemayor discussed the Government's offer of 70ish months.

4. Ayala even admitted to being paid the equivalent of $1,044 Dollars (20,000 Pesos) for each run. Decl. at ¶    An amount that either indicated a small operation of low quantity cocaine and marijuana, or supports the fact that Ayala was a minor player who did not know the value, or what, he was hauling for his childhood friend.

5. When speaking with the agents in March of 2020, Ayala also confirmed an audio recording of a phone call with Omar Hiracheta-Cruz (Defendant 6). He was also shown some pictures of batteries and he identified one as a battery he had hauled in his Suburban, the only vehicle he moved illegal items in. See Decl. at

United States v. Ayala-Rodriguez
28 U.S.C. §2255
Summary and Introduction Overview Continuation Page

6. A few days later, Ayala was brought before Magistrate Quiroa for a 48-minute Initial Appearance and appointment of CJA counsel. CR-DOC minute Entry dated 03/09/2020.

7. Four months later, Ayala and Montemayor met for the first time. During this 20 minute conversation they spoke about a plea offer, and some questions regarding Ayala's knowledge (or lack of knowledge) about the case. Montemayor indicated the Government was considering a 72 month or so sentence. See Decl. at ¶     . Montemayor also told Petitioner he was a mule, a minor role player in the case.

8. A few months later, Ayala and Montemayor met to review the plea agreement offered by the Government. It was in English, so Montemayor summarized it very briefly (Decl. at ¶    ), stating Ayala was pleading guilty to bringing drugs into the United States, but he did not discuss any details like what type of drugs, or their quantity. Reiterating Ayala was a mule, Montemayor claimed he could get him a shorter sentence. There was never a mention of a mandatory minimum at this meeting.

9. There was no discussion about the time he would get. Nor did Montemayor go over the Guideline Range, probable sentence Ayala would receive, or what to expect next. Decl. at ¶     .

10. At no point did Montemayor go through each page, let alone individual paragraphs of the proffered plea agreement. He did not mention waivers, or what Ayala was giving up by pleading. /Id. at All that was discussed briefly, was that Ayala would have to help the Government with information, which Ayala was willing to do. /Id. at

11. Like before, the visit took less than 30 minutes. Decl. at ¶     .

United States v. Ayala-Rodriguez
28 U.S.C. §2255
Summary and Introduction Overview Continuation Page

12. A few days later Petitioner was called into a large room with a bunch of other inmates. Eventually he was sat in front of three large monitors and spoke with his sentencing judge. They went over the plea agreement and him pleading guilty to Count 1. Decl. at ¶    . Most of the time Ayala was simply answering with automatic answers that he felt was what everyone wanted to hear. /Id. at      . He really did not understand the details, only that his attorney told him he would get a low sentence around 72 months because:

   (a) Ayala was a low level mule, just the courier (/Id. at

   (b) If Ayala spoke with, and helped, the government he could get a low sentence, (/Id.); and

   (c) Ayala trusted his attorney would do what he said he would: file stuff, show Ayala was willing to accept responsibility and work with law enforcement; and establish Ayala was one of many couriers. /Id. at

13. At some point after Ayala changed his plea, he was called into his GEO facility case manager's office for a 15-30 minute conference call with his Attorney, the Prosecutor, the DEA and his probation officer. Decl. at

14. On the call Ayala was questioned on what he knew of the case, Salazar's Organization, and the people and activities he was familiar with. See Decl. ¶¶'s    -    for details on what was discussed, and what Petitioner provided.

15. On the call Ayala was promised he would receive a lower sentence, which as he understood it, something in the range of 70-90 months. Decl. at

16. During the 18 months between Ayala's plea, and his sentencing Montemayor started changing the time Ayala could receive. It started at 72 months, for sure. Then moved up to 90ish months because Ayala really did not much of value; then went to at least 120 months (10 years) because they put a conspiracy on Ayala's case. Decl. at

United States v. Ayala-Rodriguez
28 U.S.C. §2255
Summary and Introduction Overview Continuation Page

17. Each time it changed, Ayala questioned Montemayor about what he promised, and was told his attorney would fight for the best sentence. Decl. at

18. It was Ayala's understanding that because he provided all the information he had, and he was honest and forthcoming with officials, the judge could and would go below his mandatory minimum.

19. When the PSR came out and Montemayor reviewed it with him, Ayala noticed that it said Ayala had made 30 or 40 trips over the border. The only person he had mentioned the 40 number to was Montemayor when Ayala was exaggerating the number to feel important. Decl. at

20. When the judge announce a sentence of 192 months, Ayala was stunned, especially when his attorney did not fight for him, object to things, or ask for a lower sentence, he just went along with out doing any of the things Montemayor had promised to do. Decl. at      . Ayala heard the judge say many times if he felt the sentence was wrong he could tell his attorney to appeal it. When the hearing was over, Ayala tried to tell Montemayor he wanted to appeal, the attorney said he would come to the jail to discuss it. He never did and Ayala was put into the COVID affected transport pipeline, eventually ending up in FCI Sandstone. Decl. at

21. It took months to get from Texas to Minnesota. During that time Ayala tried to call his attorney to ensure the appeal was happening. He was able to contact his family and asked them to try to reach Montemayor to make sure the appeal was happening. Montemayor never spoke with, or took any calls and never filed an appeal. See Decl. ¶¶'s

22. After numerous pro se filings an out time appeal was granted, Montemayor was appointed, and promptly filed an Anders brief. Which the Fifth Circuit agreed with and dismissed the appeal.

United States v. Ayala-Rodriguez
28 U.S.C. §2255
Summary and Introduction Overview Continuation Page

23. During the appeal process Ayala built a record of Montemayor's failures to be truthful with him, the appellate court, and the Texas Bar. See ¶¶'s _____ for details of the steps, responses, and results of this 18 month journey. Which establish that Montemayor has a pattern and practice of misleading everyone, not living up to standards of representation, or complying with court officials directives.

24. Days before this Petition was due, Montemayor sent a letter to Ayala in response to another request for the client file indicating he had shredded the communications, notes, and discovery in the file for safety and security reasons. See Decl. at ____ ; See Also Exhibit 2 attached to the Declaration. Petitioner is currently investigatin⸱ what he can do for a violation of ABA model ethics rules.

AO 243 (Rev. 09/17)

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** _____SEE CONTINUATION PAGE_____

_____FOR GROUND TEXT & SUMMARY_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE CONTINUATION PAGES
THROUGH
FOR FACTUAL ALLEGATIONS
(SUMMARY AND SPECIFICS)
SUPPORTING THIS GROUND

(b) **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☒

(2)  If you did not raise this issue in your direct appeal, explain why:

Ineffectiveness of Counsel, not appropriate for Appeal

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____ N/A _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐     No ☐

United States v Manuel Enrique Ayala Rodriguez
28 U.S.C. §2255 Motion
Continuation Page for Ground 1

Ground ONE: Petitioner's Sixth Amendment Right to effective
sentencing counsel was violated when Attorney
Montemayor failed to file Objections to the PSR,
a Defendant's Sentencing Memorandum, or argue for
such; causing his client to receive a sentence at
least 60 months longer than his circumstances
warranted.

**Summary of Ground**

Although Ayala's case was a mine run drug mule case, he received

a disproportionately high sentence, primarily because his attorney

failed to file (or argue) standard objections or make reasonable

recommendations to the Court. This is especially damning for petitioner

as the Court issued a straight guidelines driven sentence, pronouncing

a sentence in the middle of the starting guidelines range it found,

without the benefit of Counsel's agreements on mitigating role,

or safety valve credits due to his contributions. Exacerbating

these errors is the fact counsel had his client plead to an agreement

that waived any appeal of any sentence issued. See Waiver of Appeal,

Plea Agreement, CR-Doc. 128 at 4, ¶7.

From the first meeting Attorney Montemayor told Ayala he

was: (a) a mule aka a low level player in the case; that (b) Ayala

was facing around 70 or so months; and that (c) Ayala would need

to continue to provide assistance like he had when he was arrested.

Ayala relied on these assurances when he decided to accept

the plea Montemayor was recommending. Montemayor assured him as

long a Ayala continued to provide assistance, and was truthful

he would receive a low sentence.

During the meetings before Ayala changed his plea in front

of the Judge, Montemayor never mentioned a mandatory minimum applying

to the case. After Montemayor had ensured plea was entered, spanning

United States v Manuel Enrique Ayala Rodriguez
28 U.S.C. §2255 Motion
Continuation Page for Ground 1

the next 18 months he slowly kept adjusting his story on how much time Ayala was facing. At one point acting surprised that the Government had added a conspiracy charge, and gravely informing Ayala that meant a mandatory minimum of 10 years, but if he ended up with that sentence, Montemayor would fight it.

At no point does the docket reflect Montemayor filing an objection to the PSR, or even a defendant's sentencing memorandum. Nor did he raise any at sentencing.

Competent counsel would have Objected to the PSR, moving for a mitigating role adjustment of four (but at least two) sentencing levels. Further, a professional would have filed a sentencing memorandum arguing for a safety valve adjustment down below the 120 month mandatory minimum because Ayala had provide all he could, and was truthful, honest, and forthcoming with law enforcement.

Between these to standard arguments that competent counsel would have provided, the court would have to either:

(1) granted the objection, dropped the Transportation enhancement, and taken at least two sentencing levels off for mitigating role. Then accounting for acceptance of responsibility set the Starting Sentencing Guideline (SGL) at minimum of 33, criminal history category One, with an Starting Guideline Range (SGR) of 135-168 months an approximately 60 month drop from where it started. This would be before accounting for the safety valve credits; or

(2) Provide an extensive record establishing how it did not abuse its discretion in denying the motions, allowing a possible appeal if the wavier issue could be addressed.

Either of which is a different outcome to Ayala's sentence. The likelihood of a lower sentence is supported because at a later date, the Court sua sponte, reduced Ayala's sentence due a retroactive

change to calculating criminal history from the middle of the original SGR to the bottom of the new SGR.

Which, if Montemayor had acted competently, would have reduced Ayala's sentence to below 10 years at least.

This Court, without the benefit of proper advocacy on Montemayor's part, sentenced Ayala to a sentence closer to the kingpin's sentence than where his actual role within the organization would have placed him. Which was closer to the co-defendants at the bottom of the range of sentences handed out.

With proper advocacy when the government incorrectly claimed Ayala was the same as the primary coordinator in the group (Roberto) the Court would have been informed of the differences between the two, with references to where the prosecutor had referred to Ayala as a courier, showed that Ayala had only been following orders (like Roberto's) and whose involvement was only due to his loosing his certifications, but as soon as Ayala got the certifications restored, Ayala stopped the illegal activities.

## Supporting Facts

All the allegations proffered in Common Facts above are reiterated here, as if re-written.

Additional, specific allegations supporting the above summary of the ground will be added here in the amended Petition.

In conclusion, Ayala's first ground should be granted, or at minimum, an evidentiary hearing held (under 28 U.S.C. §2255(b) or 2255 Rule 8.

> Ayala reserves the right to amend, add, and/or modify this Ground, the language of the Ground, or the supporting facts of this Ground under any appropriate authorities, including, but not limited to: F.R.Cv.P. Rule 15 and 28 U.S.C. §2255(f)(2) and (f)(4).

AO 243 (Rev. 09/17)

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No XX          N/A

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:     **Not appropriate at that stage**

**GROUND TWO:** _____ SEE CONTINUATION PAGE _____
_____ FOR GROUND TEXT & SUMMARY _____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

SEE CONTINUATION PAGES
THROUGH
FOR FACTUAL ALLEGATIONS
(SUMMARY AND SPECIFICS)
SUPPORTING THIS GROUND

(b)  **Direct Appeal of Ground Two:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☐

United States v Manuel Enrique Ayala Rodriguez
28 U.S.C. §2255 Motion
Continuation Page for Ground 2

Ground TWO: Appointed Counsel failed to adequately investigate facts, or perform basic legal research, to prepare for Ayala's case. A representational deficiency that caused his client to receive a sentence longer than the client's participation and circumstances warranted. Thus, violating Ayala's Sixth Amendment Right to effective counsel at the plea and sentencing phases.

**Summary of Ground**

Despite diligent efforts on Ayala's part, the actions and decisions of other parties has prevented him from retrieving the records to complete a full review of Montemayor's actions and decisions, identify specific failures, and provide the requisite evidence of what an adequate investigation would have produced. Therefore this ground is to provide notice that Ayala believes there was an inadequate investigation, but due to the inaction of others he is unable to prove his belief.

Based on the reputation, pattern, and practices of Attorney Montemayor and the record, Ayala genuinely believes his attorney performed an inadequate investigation of the law and facts of his case.

Despite Ayala's continuing and numerous attempts to retrieve both: his case file from Montemayor (Decl. ¶¶'s    -    ) and his investigative files from involved law enforcement or the prosecutor's office (/Id. ¶¶'s    -    ), no records have been provided. Instead agencies have refused, or ignored the requests requiring Ayala to resort to court action. Or in the case of the Attorney Montemayor's files, shred them instead of turning them over to his client.

United States v Manuel Enrique Ayala Rodriguez
28 U.S.C. §2255 Motion
Continuation Page for Ground 2

Due to other parties refusing to abide by their ethics or F.O.I.A. obligations, Ayala cannot meet, at this time, the required specificity of what errors occured and how they affected the outcome of his trial.

Yet, there is enough evidence on the record that the court can find that:

Counsel: Did not investigate Ayala's actual position within the organization, nor did he review the applicable law on Role mitigation, both of which would have supported a role adjustment; and

Did not research or investigate the information his client provided on multiple occasions, and how that assisted law enforcement in the case which would have allowed counsel to argue for more credit under the safety valve.

Both of which would have changed the outcome of Ayala's sentence, as the Court would have easily started with a lower sentencing guideline range, and thus more likely than not, a much lower sentence would have been pronounced.

None of Montemayor's decisions can be considered strategic, as they were made without the benefit of a simple or reasonably necessary investigation before embarking on them.

United States v Manuel Enrique Ayala Rodriguez
28 U.S.C. §2255 Motion
Continuation Page for Ground 2

**Supporting Facts**

All the allegations proffered in Common Facts above are reiterated here, as if re-written.

Additional, specific allegations supporting the summary of the ground will be added here in the amended Petition.

In conclusion, Ayala's second ground should be granted, or at minimum, an evidentiary hearing held (under 28 U.S.C. §2255(b) or 2255 Rule 8 because:

Besides counsel's failures to investigate and research for sentencing, noted above, at this time Ayala is prevented from proving additional reasons to grant this ground. Once the the Plaintiff-Respondent relinquishes the requested records Petitioner will be amend this ground.

Ayala reserves the right to amend, add, and/or modify this Ground, the language of the Ground, or the supporting facts of this Ground under any appropriate authorities, including, but not limited to: F.R.Cv.P. Rule 15 and 28 U.S.C. §2255(f)(2) and (f)(4).

AO 243 (Rev. 09/17)

(2)  If you did not raise this issue in your direct appeal, explain why:

Not appropriate at that stage

(c)  **Post-Conviction Proceedings:**                              N/A

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☐

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐      No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐      No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐      No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Not appropriate at that stage

AO 243 (Rev. 09/17)

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?    Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

N/A

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:

None

(b) At the arraignment and plea:

Francisco Javier Montemayor, JR; 1020 Juarez Ave., Laredo, TX 78042

(c) At the trial:

Plea - Same

(d) At sentencing:

Same

(e) On appeal:

Same

(f) In any post-conviction proceeding:

N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:

N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☐    No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

N/a

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐    No ☒

AO 243 (Rev. 09/17)

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Ayala was sentenced on April 5, 2022 and his untimely appeal was accepted and decided on June 14, 2024. He did not file for certiorari, but under Clay v United States, 537 U.S. 522, 532 (2003) his criminal case is not final until 90 days from the decision of the appellate court making Petitioner's criminal case final on September 13, 2024 (06-15-2024 plus 90 days to file certiorari). Under 28 U.S.C. §2255(f)(1) this motion is timely if filed within one year of that date, or by or before September 13, 2025.

As noted throughout the Petition, it is intended to be a place holder motion, it is filed to be amended, pursuant applicable rules.

**Manuel Enrique Ayala Rodriguez** reserves the right to amend, add, and/or modify this petition, the language of any Ground or supporting facts under any appropriate authorities, including but not limited to: F.R.Cv.P. Rule 15 and/or Title 28 U.S.C. §2255(f)(2) and (f)(4).

The allegations in this motion are not the full facts available or known to **Manuel Enrique Ayala Rodriguez** but are meant to establish the bare minimum facts needed to show he has colorable viable claims worth developing further, all that is needed under F.R. governing 2255 proceedings, Rule 4. If the Court finds any allegations do not meet this standard, **Manuel Enrique Ayala Rodriguez** respectfully requests the Court to allow him to correct any deficiencies because this is his one and only chance to be heard on these claims. Jones v. Hendrix, Supreme Court, June 2023, Case No.: 210857, 143 S. Ct. 1857, (2023).

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
(1) the date on which the judgment of conviction became final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

# C E R T I F I C A T E   O F   S E R V I C E

I hereby certify that on this 12 day of _September_, 20 25 I placed with the Corrections Officer conducting AM LEGAL MAIL at FCI Sandstone, my addressed First Class postage affixed envelope(s) containing the original(s) of:

Verified Motion to Stay Habeas Proceedings

and any supporting documents and attachments noted therein. The envelope(s) were addressed as follows:

United States District Court
for the Southern District of Texas
1300 Victoria St. Ste. 1131
Laredo, TX 78040

**PLEASE NOTE:** In the interest of efficiency the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court Clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above. AM LEGAL mail call is the designated legal mail system at this institution. Please see Houston v Lack, 478 U.S. 266, 276 (1988).

Sworn as true and correct under pains and penalties of perjury.

Executed on the above noted date under 28 U.S.C. §1746.

_Manuel Ayala_
Manuel Enrique Ayala Rodriguez

Therefore, Movant asks that the Court grant the following relief:

Conduct (or hold) any necessary evidentiary process (or hearing) to grant any (or all) of the following relief requested:

(1) **FIND** Attorney Montemayor's sentencing performance and representation was Constitutionally deficient; and BUT FOR Counsel's failures to preserve sentencing issues Ayala's sentence most likely would have been shorter;

(2) Vacate (or set aside) Manuel Enrique Ayalas Rodriguez's sentence;

(3) Reset all sentencing clocks & decisions, and set for a plenary resentencing;

(4) Any other relief Movant may be entitled to.

Manuel Enrique Ayala Rodriguez
Petitioner pro se

I declare under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. §2255 was placed in the prison mailing system on September ____, 2025.

Please see included certificate of filing and service for details executed on September 12, 2025.

Manuel Enrique Ayala Rodriguez