# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| **MANUEL AYALA RODRIGUEZ** | § | |
| | § | |
| **Petitioner** | § | |
| VS. | § | **CIVIL NO. 5:25-CV-156** |
| | § | **CRIMINAL NO. 5:20-CR-786-10** |
| **UNITED STATES OF AMERICA** | § | |

## MEMORANDUM OPINION AND ORDER

Manuel Enrique Ayala Rodriguez ("Petitioner"), federal prisoner register number 15514-579, filed an amended *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Dkt. 12; Cr. Dkt. 445.)

Having reviewed the amended motion, the record, and the applicable law, the Court DENIES the motion for the reasons shown below.

## Background and Claim

Petitioner pleaded guilty pursuant to a written plea agreement to conspiracy to possess with intent to distribute heroin, methamphetamine, and fentanyl. The Court imposed a within-guidelines sentence of 192 months of imprisonment on April 1, 2022. The United States Court of Appeals for the Fifth Circuit dismissed Petitioner's direct appeal as frivolous on June 14, 2024. The Court subsequently reduced Petitioner's sentence to a 135-month term of imprisonment on August 24, 2024, pursuant to United States Sentencing Guidelines Amendment 821.

Petitioner raises one claim in his amended motion. He contends that trial counsel was ineffective in not moving for a "minimal participant" mitigating role adjustment under U.S.S.G. §

1 / 16

3B1.2(b) at sentencing. Petitioner argues that, following an evidentiary hearing, the Court should vacate his sentence and re-sentence him to time served.

## Legal Standards

### Section 2255

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may move the sentencing court which imposed his sentence to vacate, set aside, or correct the sentence on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  The prisoner bears the burden of proving his claim by a preponderance of the evidence.  *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

### Pro Se Pleadings

Because Petitioner is proceeding *pro se*, his pleadings are entitled to, and have been given, more lenient scrutiny than those drafted by lawyers.  *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).  Nevertheless, "*pro se* and represented litigants alike must comply with court procedural rules to ensure fairness, predictability, and efficiency in the judicial process." *Barnum v. Welch*, 2025 WL 2978450, *2 (5th Cir. Oct. 22, 2025).  Simply put, "self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *See Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991).  In particular, Petitioner must meet his burden of proving his § 2255 claim by a preponderance of the evidence; conjecture, speculation, and conclusory assertions do not suffice.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

### *Ineffective Assistance of Counsel*

Claims for ineffective assistance of counsel are governed by the two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that his counsel's performance was deficient and that the deficient performance caused him prejudice. *Id*. at 688, 694. This means that a petitioner must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

Counsel's assistance is deficient if it falls below an objective standard of reasonableness. *Strickland* at 688. Judicial scrutiny of counsel's performance is highly deferential and applies a strong presumption that counsel's assistance was reasonable. *Id*. at 689. Because it is easy to second-guess counsel's performance after a conviction or adverse sentence, a fair assessment of performance requires reconstructing the circumstances of counsel's conduct from his perspective at the time, rather than indulging the "distorting effects of hindsight." *Id*. "In essence, the Sixth Amendment entitles a criminal defendant to reasonable, but not perfect, representation of counsel." *United States v. Valdez*, 973 F.3d 396, 404 (5th Cir. 2020); *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981) (explaining that the right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance).

Ineffective assistance of counsel prejudices a defendant if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To meet the prejudice prong, a defendant "must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). A failure to

establish either deficient performance or resulting prejudice defeats the claim, and courts need not

address both *Strickland* prongs if one of them is dispositive.  *Strickland*, 466 U.S. at 697.

"An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful

ineffective assistance of counsel claim because the result of the proceeding would not have been

different had the attorney raised the issue."  *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.

1999).

### Analysis

Petitioner argues that trial counsel was ineffective in failing to move for a mitigating role

adjustment under U.S.S.G. § 3B1.2(b).  Specifically, Petitioner contends that he met the

requirements for being a "minimal participant" and that, had counsel moved for the role adjustment

at sentencing, the adjustment would have been granted and he would have faced a sentencing

guideline range of only 37 to 46 months.  (Dkt. 12-1, p. 2; Cr. Dkt. 445-1, p. 2.)

U.S.S.G. § 3B1.2, "Mitigating Role," provides as follows:

> Based on the defendant's role in the offense, decrease the offense level as
> follows:
>
> (a)    If the defendant was a minimal participant in any criminal activity,
>        decrease by 4 levels.
>
> (b)    If the defendant was a minor participant in any criminal activity,
>        decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

Additional provisions appear in the Commentary to § 3B1.2, as follows:

4 / 16

3.      <u>Applicability of Adjustment</u>.

   (A)    <u>Substantially Less Culpable than Average Participant</u>. – This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him *substantially less culpable than the average participant in the criminal activity*.

   \*   \*   \*

   (C)    <u>Fact-Based Determination</u>. – The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is *based on the totality of the circumstances* and involves a determination that is heavily *dependent upon the facts of the particular case*.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

   (i)    the degree to which the defendant understood the scope and structure of the criminal activity;

   (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

   (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)    the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she *is substantially less culpable than the average participant in the criminal activity*.

4.    <u>Minimal Participant</u>. – Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in the criminal activity. It is intended to cover *defendants who are plainly among the least culpable of those involved in the conduct of a group*. Under this provision, the defendant's *lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant*.

5.    <u>Minor Participant</u>. – Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

6 / 16

U.S.S.G. § 3B1.2 (emphasis added).

Under the established precedent of this circuit, a defendant is entitled to a mitigating role reduction under U.S.S.G. § 3B1.2 when he shows by a preponderance of the evidence (1) the culpability of the average participant in the criminal activity, and (2) that he was substantially less culpable than the average participant. *United States v. Palacios-Villalon*, 802 F. App'x 868, 869 (5th Cir. 2020) (per curiam) (citing *United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016)). An "average participant" under § 3B1.2 "means only those persons who actually participated in the criminal activity at issue in the defendant's case so that the defendant's culpability is determined only by reference to his or her co-participants in the case at hand." *United States v. Bello-Sanchez*, 872 F.3d 260, 264 (5th Cir. 2017). Moreover, no reduction is available under § 3B1.2 unless the defendant was only "peripheral to the advancement of the criminal activity." *United States v. Perez-Solis*, 709 F.3d 453, 471 (5th Cir. 2013); *United States v. Resendez-Gomez*, 2022 WL 1001438, at *1 (5th Cir. Apr. 4, 2022) (per curiam). Under the Commentary, a defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

In his written plea agreement, Petitioner acknowledged that the following factual statement was true and correct:

> In June 2017, DEA began an investigation into the illegal drug trafficking activities of the Juan Manuel Salazar-Alvarez Drug Trafficking Organization (DTO). Juan Manuel Salazar-Alvarez was identified as a leader within the Cartel de Jalisco Nueva Generacion, operating in Nuevo Laredo, Tamaulipas, Mexico. Salazar-Alvarez directed a large scale organization comprised of couriers, stash house operators, and transportation coordinators responsible for smuggling multi-kilogram quantities of

7 / 16

fentanyl, heroin, methamphetamine and cocaine often concealed in fire extinguishers, wooden blocks, vehicle batteries and hydraulic jacks from the States of Michoacan and Jalisco to Nuevo Laredo, Tamaulipas and into Laredo, Texas. Upon arriving in Laredo, Texas, the drugs were stashed in storage units, tractor trailers or other locations before delivery to other couriers for transportation to other U.S. cities.  Manuel Enrique Ayala Rodriguez was identified as a co-conspirator who illegally imported drugs for the Salazar DTO via the bridges for delivery to other co-conspirators in the Laredo, Texas area.

On April 25, 2018 a Confidential Source informed DEA that he/she was contacted by FNU LNU a/k/a "Chuy" regarding having a drug laden battery delivered in Laredo, Texas.  The CS had recorded conversations between the CS and FNU LNU "Chuy."  During the recorded conversations Chuy informs [*sic*] the CS that Manuel "El Gordillo" would be calling the CS in order to meet with the CS.  (a reference to meeting for delivery of the battery [*sic*][)].  CS's phone was also later contacted by a Mexican was [*sic*] the phone used by Ayala Rodriguez.  The CS was informed to meet Manuel who would be dropping off the battery at the H-E-B on San Dario Avenue in Laredo, Texas.  Manuel Enrique Ayala Rodriguez had previously been identified by agents as someone working on behalf of Juan Manuel Salazar.  Agents set up surveillance to witness the meeting between the CS and Manuel Enrique Ayala Rodriguez.

The CS went to the H-E-B on San Dario and was equipped with a recording device. The CS arrived at the H-E-B and met with Ayala Rodriguez who was standing in front of a Chevrolet Suburban.  Ayala Rodriguez transferred the drug laden battery to CS and placed it in the CS's vehicle.  During the meeting Ayala Rodriguez tells the CS that he was only tasked with bringing one battery from Mexico rather than two.  After about ten minutes the CS departs the H-E-B with the drug laden battery. Ayala Rodriguez is followed southbound on IH-35 as he returns back to Mexico via the Lincoln Juarez Bridge.  The Exide battery was transported to DEA where it was opened and found to contain approximately 13.05 kilos of methamphetamine.

On July 19, 2018, DEA agents received an alert from Columbia Bridge that Juan Manuel Salazar and another co-conspirator entered the United States in a black Chevrolet Tahoe bearing Mexico plates.

Agents followed the black Chevrolet Tahoe to a storage facility (Stor-In-Town) located on Rosario Street, Laredo, Texas.  DEA agents confirmed that Salazar was the renter of Stor-In-Town storage unit 115.

On August 7, 2018, DEA agents received an alert that Ayala Rodriguez entered the United States via the Lincoln Juarez Bridge in a black Chevrolet Suburban bearing Mexico plates. Based upon this information, agents responded to the Stor-In-Town located on Rosario Street and surveilled the black Chevrolet Suburban at the location driven by Ayala Rodriguez.

DEA agents followed the Chevrolet Suburban as it departed the storage facility and stopped on Midland Drive. Ayala Rodriguez was observed retrieving several batteries from the Chevrolet Suburban and placing these batteries in a parked trailer tractor parked on Midland Drive, Laredo, Texas. Ayala Rodriguez left the area and agents maintained surveillance on the tractor trailer in which Ayala Rodriguez had placed the batteries.

The following morning on August 8, 2018, a male subject parked behind the tractor that contained the batteries delivered by Ayala Rodriguez. The male subject retrieved the two batteries from the parked tractor trailer to the bed of his pickup truck and departed the area. A traffic stop was conducted and officers saw the two batteries in the back of the pickup truck with obvious signs of tampering. The batteries delivered by Ayala Rodriguez revealed bundles of, what was later confirmed to be, 6.5 kilos of methamphetamine, 4.5 kilos of heroin and 2.3 kilos of fentanyl.

The co-conspirator arrested admitted that he and others worked for Juan Manuel Salazar and identified Unit 115 at Stor-In-Town storage as used by the DTO to store drugs usually hidden in car batteries or wooden blocks which members of the DTO would access to either drop off or pick up batteries or wooden blocks with drugs.

On August 8, 2018, agents executed a state search warrant at Stor-In-Town Warehouse Unit 115 in Laredo, Texas. The execution of this search warrant led to the seizure of two drug-laden batteries, which were discovered to contain

approximately 5.9 kilograms of heroin and 6.5 kilograms of methamphetamine. The concealment method for these batteries was similar to that of the other drug-laden batteries that were delivered by Ayala Rodriguez and seized[.]

On March 5, 2020, Manuel Enrique Ayala Rodriguez was arrested by DEA agents as he entered at the World Trade Bridge. Ayala Rodriguez waived his rights and made the following admissions.

Ayala Rodriguez admitted to trafficking in drugs on behalf of Juan Manuel Salazar whom he had known since his childhood in Mexico. Ayala Rodriguez admitted that approximately two years ago he began moving drugs on behalf of Salazar while working as a transfer driver which made it ideal for illegally importing drugs. Ayala Rodriguez estimated he began working for Salazar [in] 2017 or 2018.

Ayala Rodriguez admitted that when he first started moving drugs for Salazar the drugs were hidden in fire extinguishers and while he knew they contained drugs he did not know the specific drug. Ayala Rodriguez admitted that he imported the drug-laden fire extinguishers from Mexico to the United States, and was paid 20,000 Mexican Pesos each time.

Ayala Rodriguez also admitted that Salazar used various concealment methods so in addition to transporting fire extinguishers with drugs, he also transported wooden blocks, hydraulic jacks and car batteries.

Ayala Rodriguez also admitted to picking up drug-laden batteries at a storage unit in Laredo and delivering them to a parked tractor trailer near Mines Road at the behest of Salazar. Ayala Rodriguez also admitted to making multiple deliveries of drug-laden batteries to a male subject from Michoacan at the H-E-B on Calton Road. Ayala Rodriguez admitted to delivering at this H-E-B to the Michoacan subject between 10–15 times and that he would import the drugs by using the batteries hooked to his black Chevrolet Suburban.

11 / 16

Ayala Rodriguez also admitted to delivering two drug-laden wooden blocks to Salazar's half brother near the old hospital in Laredo.  Ayala Rodriguez estimated that in total he had assisted Salazar in trafficking drugs on 30 or 40 occasions.

Therefore, Defendant Manuel Enrique Ayala Rodriguez judicially admits and confesses that on the dates alleged in the indictment he conspired with others named in the indictment to possess with the intent to distribute 1 kilogram or more of heroin, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and 400 grams or more of N-phenyl  (fentanyl) schedule I and II controlled substances, within the Southern District of Texas and elsewhere within the jurisdiction of the court.

(Cr. Dkt. 128, pp. 6–12; capitalization and spelling edited for uniformity and readability.)  These and related facts were also set forth in Petitioner's Revised Presentence Investigation  Report ("Revised PSR").

Paragraph 71 of the Revised PSR, "Adjustment for Role in the Offense," stated as follows:

71. Adjustment for Role in the Offense: Pursuant to U.S.S.G. § 3B1.2, Mitigating Role, based on the defendant's role in the offense, decrease the offense level as follows: (a) if the defendant was a minimal participant in any criminal activity, decrease by 4 levels, (b) if the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels. According to U.S.S.G. § 3B1.2, comment, (n.3(C)), the guidelines have provided a non-exhaustive list of factors that the Court should consider in determining whether the adjustment is appropriate. As reflected in the Defendant's Offense Conduct section, Ayala Rodriguez admitted to assisting Salazar Alvarez in trafficking drugs on 30 or 40 occasions. He admitted to importing the drug-laden fire extinguishers from Mexico to the United States and receiving 20,000 Mexican Pesos in monetary compensation each time. He further indicated that Salazar-

Alvarez used various concealment methods which included fire extinguishers, wooden blocks, hydraulic jacks and car batteries. *Based on the defendant's integral role in the conspiracy, the defendant is not deemed a minor participant and a role adjustment was not deemed applicable.*

(Cr. Dkt. 229, ¶ 71, emphasis added, defendant numbers and footnote omitted.)   The Court expressly adopted the Revised PSR without change, thereby agreeing that Petitioner was not a minor participant in the conspiracy.  (Cr. Dkt. 373, p. 3.)  Consequently, the Court impliedly determined that Petitioner was not a minimal participant, which would have required the showing of an even lower level of participation by Petitioner.  *See Perez-Solis*, 709 F.3d at 471 ("Thus, a defendant whose role was too substantial to qualify for a two-level, minor-participant reduction is likewise not entitled to the three- or four-level reduction.").

The Court informed Petitioner on the record at sentencing as follows:

And, you know, this case is significant.  I cannot impress upon and, you know, articulate the significance and the weight of this case and the amount of narcotics that were seized in a very short amount of time *and the level of involvement that you had in a very short amount of time* that you're being held accountable for right now. You know, no doubt fentanyl, methamphetamine, heroin, significant, deadly drugs destroying our country, and *you played a very significant role* and made a decision to get involved with this type of activity.

(Cr. Dkt. 373, p. 14, emphasis added.)  Thus, the Court expressed on the record its opinion that Petitioner had "played a very significant role" in the conspiracy, indicating that Petitioner was not a minimal participant and was more than peripheral to the advancement of the criminal activity.[1]

---

[1] Petitioner does not, and cannot, challenge within context of this § 2255 proceeding the Court's determinations that he was not a minor participant and that a role adjustment was not applicable. As the Fifth Circuit has long held, "[a] district court's technical application of the Guidelines

To establish that counsel was ineffective in this regard, it is Petitioner's burden to prove that, but for counsel's failure to move for a minimal participant role adjustment, the result of the proceeding would have been different. Petitioner does not meet that burden of proof. He fails to show that the record, totality of the circumstances, and the particular facts of his case established that he was less than an average participant in the conspiracy and that he was only peripheral to the advancement of the conspiracy. The Revised PSR and the record as a whole demonstrate that Petitioner performed as a courier, drug importer, and transaction arranger and played more than a peripheral role in the conspiracy. In addition to personally importing large quantities of concealed drugs from Mexico into the United States, he met with other individuals including a confidential source, retrieved and transported concealed drugs from a storage facility in Laredo to other individuals, and arranged by telephone to meet with a confidential source to complete a drug transaction.

Petitioner's arguments that Salazar was his sole contact and that his participation was strictly limited to moving concealed drugs from one point to another at Salazar's direction are refuted by the factual statement in Petitioner's written plea agreement and his testimony at the plea hearing. Petitioner personally stated on the record at sentencing that he had reviewed the Revised PSR with counsel and that everything in the report was correct. (Cr. Dkt. 373, p. 3.) Nothing in the record establishes that Petitioner was plainly among the least culpable of those involved in the conspiracy. Additionally, Petitioner's admissions in the Revised PSR negated his role as a minimal participant, as they indicated he had substantial knowledge and an understanding of the scope and structure of the enterprise, was well aware of how the drugs were being brought into the

---

does not give rise to a  constitutional issue cognizable under § 2255." *United States v. Segler,* 37 F.3d 1131, 1134 (5th Cir. 1994).

United States and how they were being concealed, and trafficked the drugs by importing them into the United States from Mexico on 30 or 40 occasions on behalf of the enterprise over approximately two years.

Moreover, Petitioner's argument that he was merely a "mule" or drug courier affords him no basis for relief. The Fifth Circuit Court of Appeals recognizes that drug couriers are not automatically entitled to role adjustments, as the determination must be based on the totality of the circumstances, is heavily dependent upon the facts of each particular case, and is not governed by any one factor. *See*, *e.g.*, *United States v. Lawson*, 2025 WL 618106, at *2–3 (5th Cir. Feb. 26, 2025) ("[W]hen some factors support the [mitigating-role] reduction, but others do not, the district court does not clearly err in denying the reduction.") (quoting *United States v. Pike*, 979 F.3d 364, 365 (5th Cir. 2020)).

Petitioner fails to meet his burden to prove that, had counsel moved for a role adjustment as a minimal participant, the adjustment would have been granted and Petitioner would have received a significantly less harsh sentence. Petitioner shows neither deficient performance nor actual prejudice under *Strickland*, and relief under § 2255 is unwarranted.

Petitioner's amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, (Dkt. 12; Cr. Dkt. 445), is DENIED.

## Evidentiary Hearing

An evidentiary hearing under § 2255 is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing on his § 2255 motion only if he presents "independent indicia of the likely merit of [his] allegations." *United States v. Reed*, 719 F.3d 369,

15 / 16

373 (5th Cir. 2013). Petitioner here has failed to present independent indicia in support of the likely merit of his claim, and an evidentiary hearing is unwarranted.

An evidentiary hearing is DENIED.

### Conclusion

Petitioner's amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Dkt. 12; Cr. Dkt. 445) is DENIED. A certificate of appealability is DENIED.

The ancillary civil case in *United States v. Rodriguez*, C.A. No. 5:25-CV-156 (S.D. Tex.), is ORDERED ADMINISTRATIVELY CLOSED. Any pending motions in that case are DISMISSED AS MOOT.

The Clerk of Court is DIRECTED to mail Petitioner a copy of this order by any receipted means at the address indicated in his most recent filing.

IT IS SO ORDERED.

SIGNED this December 15, 2025.

Diana Saldaña
United States District Judge

16 / 16